UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAREN H., <br><br>   Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>   Defendant. | Civil Action No. 1:22-cv-07245 <br><br> **OPINION** |

**APPEARANCES**:

Maryjean Ellis
LAW OFFICE OF MARYJEAN ELLIS LLC
93 Main Street #6
Newton, NJ 07860

 *On behalf of Plaintiff*.

Andrew C. Lynch
Special Assistant United States Attorney
C/O SOCIAL SECURITY ADMINISTRATION
OFFICE OF PROGRAM LITIGATION,
OFFICE OF THE GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

 *On behalf of Defendant*.

**O'HEARN, District Judge.**

 This matter comes before the Court on Plaintiff Karen H.'s[1] appeal from a denial of Social Security disability benefits and disabled widow's benefits by the Commissioner of Social Security

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

("Defendant"). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Administrative Law Judge's ("ALJ") decision.

## I. BACKGROUND

The Court recites herein only those facts necessary for its determination on this Appeal.

### A. Administrative History

On January 4, 2021, Plaintiff filed an application for disability insurance benefits and on January 12, 2021, filed an application for disabled widow's benefits alleging that she had been disabled since December 31, 2020. (AR 16). The applications were denied initially on April 7, 2021, and upon reconsideration on July 6, 2021. (AR 16). On July 15, 2021, Plaintiff filed a written request for a hearing before an ALJ. (AR 16). The ALJ held a hearing by telephone on November 19, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert ("VE"). (AR 32–59). In a decision dated December 27, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 13–31). That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 24, 2022. (AR 1–7). Plaintiff timely filed this appeal on December 13, 2022, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (ECF No. 1).

### B. Plaintiff's Background and Testimony

At the alleged onset of disability, Plaintiff was fifty-seven years old and living with her eighteen-year-old daughter in New Jersey. (AR 40, 60, 128). After finishing high school, Plaintiff completed a four-year apprenticeship program. (AR 40). From 1982 until 2020, Plaintiff worked as an electrician. (AR 63). Her physical tasks involved climbing ladders, bending over, reaching up, and standing for eight hours. (AR 41). Plaintiff alleged that she became disabled on December 31, 2020, and has not performed work since that date. (AR 60).

Plaintiff's initial claim on January 12, 2021, cited the following illnesses, injuries, or conditions: back issues including disc displacement and lumbar degeneration, carpal tunnel in both hands, malignant melanoma in her right shin, high cholesterol, high blood pressure, anxiety, constant pain, and thyroid issues. (AR 60). At the administrative hearing, Plaintiff alleged that her back pain prevented her from bending over, reaching up, climbing, kneeling, crawling, and standing for eight hours. (AR 41). Plaintiff testified that cold weather exacerbated her symptoms, making it difficult to handle tools due to her carpal tunnel. (AR 42). Plaintiff claimed that she had difficulty concentrating due to pain, which prevented her from performing tasks such as reading, sitting, and walking. (AR 48–49).

Plaintiff applies a Lidocaine patch to reduce her back pain and can no longer take ibuprofen because it increases her already elevated blood pressure. (AR 44–45). Plaintiff testified that she takes muscle relaxers to help her sleep. (AR 44). Plaintiff alleged that she cannot perform most household chores and relies on her daughter and hired assistance to complete household tasks. (AR 47).

Plaintiff has visited her chiropractor on a weekly basis for eighteen years to address her back pain. (AR 45). Plaintiff also testified that she no longer has issues related to her melanoma, but still visits a doctor every six months to perform biopsies. (AR 48).

C.  **Testimony of Vocational Expert**

The VE classified Plaintiff's past work as an electrician with a specific vocational preparation ("SVP") of seven and a medium physical demand level which required the following skills: fabricating, installing, and repairing objects that have electronic functioning elements, and any combination of boring, screwing, bolting, nailing, soldering, or welding. (AR 53–54). The

VE concluded that Plaintiff has skills that transfer with little, if any, vocational adjustment in terms of tools, work processes, and work settings. (AR 56).

The VE testified that a hypothetical individual with the same characteristics as Plaintiff could perform the work of an electrical technician, the physical demand for which is classified as light, with an SVP of seven, and of which there are approximately 14,000 jobs in the national economy. (AR 54). Additionally, the VE testified that the hypothetical individual could perform the work of an electronic assembler. (AR 54). For this job, the physical demand is also considered light, with an SVP of four. (AR 54). There are approximately 11,200 electronic assembler jobs in the national economy. (AR 54). The VE derived these numbers from the Department of Labor and Bureau of Labor Statistics. (AR 55).

**D. Medical History**

Plaintiff has been examined by two physicians over the last two decades and throughout the pendency of her claim. The Court will briefly summarize the relevant medical evidence for purposes of this Appeal. This recitation is not comprehensive.

1. <u>James Crudele, M.D.</u>

In October 2021, Plaintiff's family medicine physician for twenty years, Dr. Crudele, completed a Medical Source Statement. (AR 582–83). He noted Plaintiff's diagnoses of herniated discs, hypertension, carpal tunnel, and lumbar radiculopathy and determined that her prognosis was poor. (AR 582). Dr. Crudele noted that Plaintiff could sit for up to two hours and stand for a total of up to two hours in an eight-hour workday, and that she needed to alternate between sitting and standing every 10 minutes to relieve pain or discomfort. (AR 582). He opined that Plaintiff was rarely able to lift less than ten pounds and recommended that Plaintiff avoid temperature extremes, humidity, wetness, hazards, fumes, odors, chemicals, and gases.

(AR 582–83). According to Dr. Crudele, Plaintiff would require unscheduled breaks, walking breaks, and excessive restroom breaks throughout the day. (AR 583). Dr. Crudele opined that Plaintiff would likely be absent from work due to her impairments four or more days per month. (AR 583).

   2. Stephen J. Safka, D.C.

In October 2021, Plaintiff's chiropractor for eighteen years, Dr. Safka, completed a Medical Source Statement. (AR 584–85). He noted Plaintiff's diagnoses of lumbar radiculopathy, somatic and segmental dysfunction of the lumbar spine, sciatic and lower back pain, and neck pain, and determined Plaintiff's prognosis to be poor. (AR 584). Dr. Safka opined that Plaintiff could sit for up to two hours and stand for up to two hours during an eight-hour workday, and that she was rarely able to lift or carry less than ten pounds. (AR 584). He recommended that Plaintiff avoid temperature extremes, humidity, wetness, hazards, fumes, odors, chemicals, and gases. (AR 585). According to Dr. Safka, Plaintiff would require hourly breaks, walking breaks, and restroom breaks throughout an eight-hour workday. (AR 585). He also opined that Plaintiff would likely be absent from work due to impairments four or more days per month, citing sciatic pain that impairs her mobility. (AR 585).

II.     **LEGAL STANDARD**

   A. **Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). By contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42

U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations, quotation marks, and alteration omitted); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009).

The substantial evidence standard is a deferential one, and an ALJ's decision cannot be set aside merely because a Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.").

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). "The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Id.*; *see also Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "'review the evidence in its totality,' and 'take into account whatever in the record fairly detracts from its weight.'" *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)). Evidence is not substantial

if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent*, 710 F.2d at 114). Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)).

### B. Sequential Evaluation Process

The Commissioner of the Social Security Administration ("SSA") has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by

7

> the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (internal citations and footnote omitted) (alterations in original).

### III. ALJ DECISION

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024. At Step One, the ALJ found that Plaintiff had engaged in substantial gainful activity, long enough to achieve average performance, and within the relevant period. (AR 24).

At Step Two, the ALJ found that Plaintiff had the following severe impairments: history of malignant melanoma of the right shin; cervical, thoracic, and lumbar spine dysfunction; and hypertension. (AR 19). The ALJ found Plaintiff's carpal tunnel with hand pain, obstructive sleep apnea, hyperlipidemia, and obesity to be "non-severe" because they improved within one year or are mild in nature, and therefore do not affect Plaintiff's ability to work. (AR 19). Finally, the ALJ found that Plaintiff's alleged impairments of thyroid issues and anxiety disorder are not medically determinable impairments due to a lack of objective evidence. (AR 19).

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1, 20 CFR §§ 404.1520(d), 404.1525–404.1526. (AR 20).

At Step Four, the ALJ found that Plaintiff had the RFC to perform light work, except that Plaintiff can never work at unprotected heights, climb ladders, ropes, or scaffolds, or work in close proximity to dangerous machinery or moving mechanical parts of equipment. (AR 20).

At Step Five, the ALJ found that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. (AR 24). Relying

on the VE's testimony, the ALJ found that approximately 14,000 jobs as an electrical technician and 11,200 jobs as an electronic assembler existed in the national economy and could be performed by an individual with Plaintiff's vocational profile, which the ALJ determined to be consistent with the information contained in the Dictionary of Occupational Titles (DOT). (AR 25). The VE testified that the jobs of electrical technician and electronic assembler could be performed with little, if any, vocational adjustment in terms of tools, work processes, work settings, and industry. (AR 25). The ALJ therefore concluded that Plaintiff was not disabled under the framework of Medical-Vocational Rule 202.07 from December 31, 2020, through the date of the decision. (AR 25).

## IV. DISCUSSION

In her appeal, Plaintiff identifies three alleged errors within the ALJ's decision: that (1) the ALJ's analysis at step five is not supported by substantial evidence and is contrary to law; (2) the ALJ failed to properly evaluate the opinions of Plaintiff's treating physicians; and (3) the ALJ's credibility assessment is flawed because the ALJ failed to properly consider Plaintiff's extensive work history. (ECF No. 10 at 12, 23, 31). The Court will address each of these arguments.[2] For the reasons that follow, the Court affirms the ALJ's decision.

### A. The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Physicians.

Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of her treating physicians, Drs. Crudele and Safka. (ECF No. 10 at 23). Specifically, Plaintiff argues that, since her treating physicians deemed her capable of no more than sedentary work, the ALJ's

---

[2] Though Plaintiff's brief addresses these arguments out of order with respect to the sequential evaluation, the Court will address them sequentially.

determination that Plaintiff is capable of light work was error. (ECF No. 10 at 23). Upon review of the ALJ's decision, the Court finds no error in the ALJ's evaluation of these medical opinions.

The RFC is crafted at step four and Plaintiff bears the burden at this step. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007). An ALJ "is entitled to weigh all evidence in making its finding . . . [and] is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences." *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (internal citation and quotation marks omitted). An ALJ "must consider all the evidence and give some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). An ALJ's factual findings, including the RFC, do not need to follow a particular format "so long as 'there is sufficient development of the record and explanation of findings to permit meaningful review.'" *Tompkins v. Astrue*, No. 12-1897, 2013 WL 1966059, at *13 (D.N.J. May 10, 2013) (quoting *Jones*, 364 F.3d at 505).

In general, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Under this framework, an ALJ considers the persuasiveness of medical opinions. *Id.* When faced with conflicting evidence, an ALJ has discretion in choosing whom to credit. *See Brown*, 649 F.3d at 196–97. An ALJ "cannot reject evidence for no reason or the wrong reason." *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993). 20 C.F.R. §§ 404.1527(c)(1)–(6) provide factors to consider in determining the weight afforded to opinions, including the nature and extent of the treatment relationship, length of relationship, frequency of examination, supportability of the opinion afforded by the medical evidence, consistency of the opinion with the record as a whole, and specialization of the treating physician. *See Russo v. Astrue*, 421 F. App'x. 184, 190 (3d Cir. 2011).

In crafting an RFC, an ALJ need only include limitations that are credibly supported by the evidence in the record. *Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014). "Where . . . a limitation is supported by some medical evidence but controverted by other evidence in the record, it is within the ALJ's discretion whether to submit the limitation to the VE." *Id.* When an RFC "conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." Social Security Ruling ("SSR") 96-8P, 1996 WL 374184, at *7 (July 2, 1996). However, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown*, 649 F.3d at 196 n.2.

Here, both Drs. Crudele and Safka opined that Plaintiff can sit, stand, and walk for less than four hours total, is unable to lift ten pounds on a regular basis, requires alternating between sitting and standing, and will be absent from work more than four days per month. (AR 582–85). Dr. Crudele opined that Plaintiff would be off task roughly two and a half hours per day; Dr. Safka opined that Plaintiff would need to take unscheduled breaks, walking breaks, and excessive restroom breaks every hour. (AR 583, 585). Plaintiff submits that, based on these opinions, she is limited to sedentary work. (ECF No. 10 at 26–27). Plaintiff does not allege that the ALJ wholly failed to consider these opinions, *see, e.g.*, *Piper v. Saul*, No. 18-1450, 2020 WL 709517, at *3-4 (W.D. Pa. Feb. 12, 2020), but rather asks this Court to re-evaluate the weight assigned to this evidence which was considered by the ALJ. The Court declines to do so.

The ALJ provided sufficient "reason[s] for discounting the evidence" of Plaintiff's treating physicians. *Plummer*, 186 F.3d at 429. The ALJ found that "objective findings in this case fail to provide strong support for [Plaintiff's] allegations of disabling symptoms and limitations." (AR 21). Specifically, the ALJ found that the medical findings of the treating physicians "do not support the existence of limitations greater than those reported in the [RFC]." (AR 21–22). The ALJ

11

chronicled the ways in which Plaintiff's RFC was supported by the record. First, the ALJ noted that, following treatment for melanoma, Plaintiff has "reported no reoccurrence" and "[e]xaminations repeatedly showed no clinical signs of reoccurrence." (AR 22). As for Plaintiff's spine dysfunction, the ALJ noted that Plaintiff improved with treatment and that diagnostic images from 2020 and 2021 showed that Plaintiff's degenerative changes, disc collapse and protrusion, flattening of the ventral cord, and possible levoscoliosis were all mild. (AR 22). Finally, though Plaintiff's hypertension was difficult to control at an earlier point, the ALJ noted that Plaintiff had required no recent treatment. (AR 22–23).

The ALJ carefully considered the opinions of Drs. Crudele and Safka and found them "minimally persuasive" because they were "excessive and . . . not generally supported by treatments nor consistent with the evidence of record including diagnostic images." (AR 23). Nonetheless, out of an "abundance of caution," the ALJ "restricted [Plaintiff[ from hazards partially based on Dr. Crudele's statement that vertigo and muscle relaxants impact [Plaintiff's] coordination which was somewhat consistent with treatment notes." (AR 23).

State agency medical consultants also provided opinions on Plaintiff's health. The ALJ found these opinions—which conflicted with those of Plaintiff's treating physicians—to be persuasive. (AR 23). The consultants opined that Plaintiff was capable of light work and the ALJ found that these opinions were "supported by detailed notes of thorough reviews of the medical record" and "consistent with the record of evidence including diagnostic images." (AR 23). However, again out of an "abundance of caution," based on Dr. Crudele's opinion, the ALJ restricted Plaintiff from hazards because of her high blood pressure and use of muscle relaxants.

(AR 23). Faced with conflicting evidence, the ALJ had significant discretion in choosing whom to credit, *Brown*, 649 F.3d at 196–97, and properly exercised that discretion here.[3]

The ALJ found the opinions of Drs. Crudele and Safka to be unpersuasive and found the opinions of the State agency medical consultants more persuasive, as is within her discretion and the reasons for which were sufficiently stated in this decision. The Court discerns no error in the ALJ's determination.

### B. The ALJ's Step Five Analysis is Supported by Substantial Evidence.

Plaintiff maintains that the ALJ's step five analysis is flawed because it failed to demonstrate that work exists that Plaintiff can perform despite her RFC and "vocational factors," including her advanced age, education, and work experience. (ECF No. 10 at 12–13). Specifically, Plaintiff argues that, contrary to the ALJ's findings, Plaintiff cannot transfer her skills to another job with "little, if any, vocational adjustment," which Plaintiff argues is required when considering a claimant of advanced age. (ECF No. 10 at 13). The Court disagrees and finds that there is substantial evidence supporting the ALJ's step five analysis.

At step five, the SSA "considers whether a claimant, despite her limitations, can perform jobs existing in significant numbers in the national economy." *Tedesco v. Comm'r of Soc. Sec.*, 833 F. App'x 957, 960 (3d Cir. 2020). "A step five analysis can be quite fact specific" and oftentimes includes the "testimony of a vocational expert." *Burnett*, 220 F.3d at 126. At step five, the SSA bears the burden of showing that the claimant can perform work in light of her age, education, work experience, and RFC. *See* 20 C.F.R. § 404.1520(a)(4)(v). The SSA defines

---

[3] The ALJ also provided reasons for discounting Plaintiff's subjective complaints, finding that Plaintiff "engages in activities that are not limited to the extent one would expect, given her complaints of disabling symptoms and limitations," including driving, shopping, preparing meals, washing dishes, and doing laundry, among others. (AR 21).

13

advanced age as being fifty-five years old or older.[4] 20 C.F.R. § 404.1563(e). When a claimant is of advanced age but not yet sixty years old, and her severe impairment limits her to no more than light work,[5] her skills must be transferable to skilled or semiskilled light work.[6] 20 C.F.R. § 404.1568(d)(4).

Whether skills are transferable "depends largely on the similarity of occupationally significant work activities among different jobs." *Id.* at (d)(1). In the case of a claimant of advanced age limited to light work, transferability of skills is most likely in jobs where "[t]he same or a lesser degree of skill is required," "[t]he same or similar tools and machines are used," and "[t]he same or similar raw materials, products, processes, or services are involved." *Id.* at (d)(2)(i)–(iii). "[C]omplete similarity . . . is not necessary for transferability." *Id.* at (d)(3). "Generally, the greater the degree of acquired work skills, the less difficulty an individual will experience in transferring skills to other jobs." SSR 82-41, 1982 WL 31389, at *5 (Jan. 1, 1982).

At the time of the onset of the alleged disability, Plaintiff was fifty-seven years old. (AR 24). The ALJ classified Plaintiff as an individual of advanced age. (AR 24). Though neither party argues that this classification was incorrect—nor could they, as Plaintiff was fifty-seven years old

---

[4] Those sixty and older are of "advanced age" and "closely approaching retirement age." 20 C.F.R. § 404.1563(e).

[5] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, . . . a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

[6] For those closely approaching retirement age, skills are transferable only if they are "so similar to [a claimant's] previous work that [she] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. § 404.1568(d)(4).

14

on the alleged date of disability onset and was fifty-eight when the ALJ rendered her decision[7]—both erroneously assert that the ALJ was required to determine whether Plaintiff's skills transfer to other jobs with "little, if any, vocational adjustment." *See* (ECF No. 10 at 13; Def. Br., ECF No. 13 at 6). That burden must only be met if a claimant is either (1) of advanced age and found to be limited to no more than sedentary work, or (2) "closely approaching retirement age (age 60 or older)" and found to be limited to no more than light work. 20 C.F.R. § 404.1568(d)(4). Neither apply to Plaintiff in this case. For a claimant such as Plaintiff who is over fifty-five years old but under sixty years old and found to be limited to no more than light work, an ALJ is only required to determine whether Plaintiff "ha[s] skills that are transferable to skilled or semiskilled light work." *Id.* The Court proceeds with its analysis under this framework.

At the administrative hearing, the VE testified that Plaintiff's past work as an electrician was skilled and carried an SVP of seven and required the skills of "fabricating, installing, and repairing objects that have electrical [or] electronic functioning elements," including "any combination of boring, screwing, bolting, nailing, soldering, [and] welding." (AR 54). The VE testified that these skills are transferable to the jobs of electrical technician and electronic assembler, both of which have light exertional levels. (AR 54). The technician job requires an SVP skill level of seven, which is considered skilled, and the assembler job an SVP skill level of four, which is considered semiskilled. (AR 25, 54). The ALJ concluded that Plaintiff has the RFC to perform light work and that Plaintiff cannot work at unprotected heights, climb ladders, ropes or scaffolds, or work in close proximity to dangerous machinery or moving mechanical parts of

---

[7] Plaintiff is also not considered to be of "borderline" age. *See Istik v. Astrue*, No. 07-1468, 2009 WL 382503, at *4 (W.D. Pa. Feb. 13, 2009) (collecting Third Circuit cases that found claimants who were one year or less away from the next age category were "borderline situations" which required consideration of whether the older age category was more appropriate).

equipment. (AR 20). Relying on Medical-Vocational Rule 202.07, the ALJ found that Plaintiff was not disabled. (AR 25).

Here, all the ALJ was required to find was that Plaintiff has "skills that [she] can transfer to other skilled or semiskilled work" and that she can do that work "despite [her] impairment(s)." 20 C.F.R. § 404.1568(d)(4). Plaintiff does not dispute that her past work as an electrician is skilled or that those skills are generally transferable. (ECF No. 10 at 13). Nor does she dispute that there is overlap between the jobs of electrician and electrical technician and electronic assembler. *See, e.g.*, (ECF No. 10 at 20) (explaining that "Plaintiff obviously must agree that there is overlap between" the jobs of electrician and electrical technician, and that "there are similarities between an electrician and electronic assembler"). However, Plaintiff argues that she cannot transfer her skills to these jobs with "little, if any, vocational adjustment" as required for an advanced aged claimant. (ECF No. 10 at 13). As explained above, that argument is unavailing because it relies on a more burdensome standard than required. This renders the majority of Plaintiff's argument on this point misplaced and provides no basis for the Court to find error in the ALJ's decision.[8]

"[C]omplete similarity" between Plaintiff's work as an electrician and the job duties of an electrical technician and an electronic assembler is "not necessary for transferability." 20 C.F.R. § 404.1568(d)(3). Transferability of skills is most likely in jobs where "[t]he same or a lesser degree of skill is required," "[t]he same or similar tools and machines are used," and "[t]he same or similar raw materials, products, processes, or services are involved." *Id.* at (d)(2)(i)–(iii). In her application for benefits, Plaintiff explained that, as an electrician, she "installed conduit, electric wiring, outlets, lighting fixtures, transformers, [and] switch gear" and "service[d] malfunctioning

---

[8] The Court notes that Defendant's argument on this point is similarly flawed as it also relies on a standard the Court finds is inapplicable to Plaintiff.

16

electrical equipment." (AR 316). At the administrative hearing, in response to questions from the ALJ, Plaintiff testified that as an electrician, which has an SVP of seven, she used hand tools in her work, prepared sketches, worked from blueprints, and connected light fixtures and power equipment. (AR 50–51).

The broad job duties of an electrical technician, which has an SVP of seven, are to rely on "electrical theory and related knowledge to test and modify . . . electrical machinery and electrical control equipment and circuitry"; diagnose the "cause of electrical or mechanical malfunction or failure"; "perform[] preventative and corrective maintenance"; develop diagrams, drawings, and specifications; perform "periodic electrical testing"; and recommend or initiate "modification or replacement of equipment which fails to meet acceptable operating standards." (ECF No. 10 at 16–17) (quoting DOT Code 003.161-010). The broad job duties of an electronic assembler, which has an SVP of four, are to "assemble electronic components"; read work orders; "follow[] production drawings"; "receive[] verbal instructions regarding duties to be performed"; position and algin parts; secure parts in place using hand tools and power tools; mount and connect components; assemble and attach hardware; perform "intermediate assembly tasks"; tend to machines; adjust or trim materials; and perform testing and inspection of parts. (ECF No. 10 at 17–18) (quoting DOT Code 726.684-018).

Plaintiff unpersuasively points to minor differences between her work as an electrician and that of an electrical technician and electronic assembler to argue that her skills are not transferable to these jobs. By way of example, she argues that an electrician's skills do not encompass "follow[ing] production drawings." (ECF No. 10 at 21). That argument is belied by Plaintiff's own description of her work as an electrician, which includes preparing sketches and working from blueprints. (AR 50–51). Of course, "complete similarity . . . is not necessary for transferability."

17

20 C.F.R. § 404.1568(d)(3). The VE testified that Plaintiff's skills transfer to these jobs "with little, if any, vocational adjustment," which was a more burdensome standard than was required. (AR 55). Relying on the VE's testimony, which "may count as substantial evidence," *Biestek*, 139 S. Ct. at 1155, the ALJ found that Plaintiff's skills transfer to these jobs.

The ALJ also found that Plaintiff was not disabled based on Rule 202.07 of the Medical-Vocational Guidelines, or "Grids." (AR 25). *See* 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.07. Plaintiff does not dispute that the ALJ properly relied on the Grids, which are "a group of clear rules that dictate a finding of disabled or not disabled based on a claimant's vocational factors (age, education, and work experience) and individual RFC." *Bernadette H. v. Comm'r of Soc. Sec.*, No. 21-20586, 2022 WL 17080743, at *5 n.8 (D.N.J. Nov. 18, 2022). When a claimant's "vocational factors and [RFC] coincide with all of the criteria of a particular rule, the [Grids] direct[] a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a); *see also* 20 C.F.R. § 404.1569 (explaining that if a claimant's vocational factors "are the same as [a] rule, [the SSA] use[s] that rule to decide whether a person is disabled."); 20 C.F.R. § 404.1569a(b) (explaining that the Grids are "directly appl[ied] to decide whether [a claimant] is disabled" if the claimant has only exertional limitations and her vocational factors are listed in a rule in the Grids). Here, Rule 202.07 of the Grids directed a conclusion that Plaintiff is not disabled because she: (1) is of advanced age; (2) is limited to light work; (3) has at least a high school education; (4) does not have education that would provide for direct entry into skilled work; (5) is skilled or semiskilled; and (6) has skills that are transferable. 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.07. The ALJ properly "use[d] the grids . . . in making the disability determination." *Kane v. Heckler*, 776 F.2d 1130, 1134 (3d Cir. 1985).

In sum, the ALJ properly relied upon the VE's testimony—which, standing alone can be substantial evidence—and the Grids, both of which supported the ALJ's finding that Plaintiff was not disabled at step five.

### C. The ALJ Properly Considered Plaintiff's Work History.

Plaintiff argues that the ALJ's weighing of medical opinion evidence, RFC determination, and evaluation of Plaintiff's subjective complaints were made based on an improper "credibility finding." (ECF No. 10 at 31–32). The majority of Plaintiff's argument is rejected for the reasons set forth in Sections IV. A. and B., *supra*. Plaintiff also argues that the ALJ did not properly consider "her 39 years of uninterrupted employment" when assessing Plaintiff's credibility. (ECF No. 10 at 32). This argument is unavailing.

"[A] claimant's testimony 'is entitled to substantial credibility' where the claimant has a lifetime record of continuous work." *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979)). A claimant's credibility is relevant when weighing her statements, including those of subjective complaints. SSR 96-7P, 1996 WL 374186, at *1–2 (July 2, 1996). In making a credibility determination, the ALJ should consider all relevant evidence in the case record. *See id.*; 20 C.F.R. § 404.1529(c). While this can include a claimant's work history, an ALJ is not required to explicitly discuss a claimant's years of uninterrupted employment. *See Sanborn*, 613 F. App'x at 177 (finding no error when an ALJ did not explicitly discuss a claimant's years of uninterrupted employment); *see also Jones*, 364 F.3d at 505 (explaining that an ALJ is not required "to use particular language or adhere to a particular format."). This is particularly true when an ALJ "explain[s] why she found that [a claimant's] subjective [complaints] . . . were belied by other evidence of record." *Sanborn*, 613 F. App'x at 177. When an "ALJ's credibility determination [i]s based on a broad view of the record

19

and would have been supported by substantial evidence regardless of whether the ALJ had explicitly considered [the plaintiff's] employment history, there is no basis for relief." *Id.*; *see also Salazar v. Colvin*, No. 12-6170, 2014 WL 6633217, at *7 (E.D. Pa. Nov. 24, 2014) ("The fact alone that a claimant has a long work history does not require a remand, particularly when medical evidence does not support a claimant's testimony of the extent of her limitations.").

Here, the ALJ provided adequate explanation for her decision to discredit Plaintiff's subjective complaints, as outlined in Section IV. A, *supra*, including imaging that showed mild disease and Plaintiff's ability to engage in many activities. Despite not mentioning Plaintiff's work history, the ALJ's credibility decision was supported by sufficient evidence.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Commissioner. An appropriate Order will follow.

                                                     */s/ Christine P. O'Hearn*
                                                    **CHRISTINE P. O'HEARN**
                                                    **United States District Judge**